Bullard, J.
The plaintiff Marcotte asserts title to a tract of land, which he describes as fronting on the bayou Rouge, and containing sixty-seven superficial acres and one-eighth, having a front on the bayou of four arpenls, more or less, as shall be necessary to complete that quantity upon a survey, by a depth from the front on the bayou, until it shall strike the line which separates the sections Four and Nine. He alleges, that he claims title under Valerien Baron, who purchased from George Baron, and the latter from Valery Bordelon. Ttie defendant Coco answers, that he has a valid and legal title, which he acquired by purchase from the same Valery Bordelon, in 1838. That he has made exten *168 sive and valuable improvements, of-the value of $5000. That he purchased the tract on account of its supposed front on the bayou Rouge. That Bordelon, the vendor, at the time of the sale, pointed out the boundaries under which the respondent has ever since possessed. He calls in his warrantor, and claims for his improvements; and that a note given for a part of the price yet unpaid, shall be given up and cancelled.
Yalery Bordelon, the common vendor and warrantor of both the parties, alleges in his answer, that the defendant Coco has a legal and valid title to all the land in his possession, having derived the same from the respondent, who admits he sold to the defendant. He further says, that he, and his vendee, the defendant, have actually possessed by metes and bounds well ascertained and known, by a valid title translative of property, for the last sixteen years ; and he pleads for himself and his vendee the prescription of ten years. He further alleges, that the suit is collusive between the original parties. That the plaintiff is the pliant tool of the defendant in instituting this suit, for the purpose of making a show of being disturbed in his possession, in order to obtain a suspension of the payment of a large sum still due for the price. He further says, that if the plaintiff has any act of sale for any part of the land occupied by the defendant, the same was executed in error and by mistake. He admits that, in 1827, he sold to George Baron a tract of land, situated on the bayou Rouge, having a front of four arpents more or less, to go back to the subdivisional line dividing section nine, the said line dividing the land above from lands of Russell Milligan, and below from lands of Yalery Bordelon, pere, to be run out by a survey to be afterwards made ; and avers that said contract of sale was from boundary to boundary. That in pursuance of said contract, and at the special instance and request of the parties, James McCauley, a deputy surveyor of the United States, did proceed, in presence of both parties, to fix the boundaries fronting on the bayou, and going back to the said subdivisional line; that the respondent delivered, and the said George Baron received possession of said land, supposed to contain about sixty-seven acres, according to the metes and bounds thus established; and that the said George Baron, and those claiming under him, and particularly the plain *169 tiff, who holds under Valerien Baron, purchased in reference to said boundaries, and that possession of both tracts has been held according to said boundaries.
Pendente lite, the right of the original plaintiff to the land in controversy was sold at sheriff’s sale, and purchased by Durand, who made himself a party plaintiff, by intervention.
Upon these issues the parties went to trial, and a judgment having been rendered for the defendant, the plaintiff appealed.
It is proper to premise, that if the plaintiff succeeds in the present action, he will have a front of about twenty acres instead of four, more or less, by extending the lines back only to the division line, which separates sections Four and Nine. This would give to the expression, more or less, a wider latitude than we have ever heard contended for. It is further to be remarked, that the parties in the act of sale from Bordelon to Baron, contemplated an actual survey, and that there is an apostille to the act, approved by the parties before signature, in these words: “ est borne par en haut par Valerien Laborde, et par en bas par le vendeur ” &c. The land afterwards sold by Bordelon to Coco, was then in the possession of the former, who owned a much larger tract extending considerably beyond the line which separates No. 4 from No. 9. The whole deed must be taken together; and it leaves the meaning of the parties ambiguous as to the back line, and appears to repel the idea that so wide a front was intended to be sold, as is now contended for. If, however, Bordelon had not been the owner of the land back of the line claimed as the real boundary, the purchaser might have demanded his complement, with a sufficient front to make it up to him.
The parol evidence shows, that shortly after the date of the sale, in 1827, to Baron, McCauley, an authorized surveyor, proceeded, in presence of the parties, to lay off the land sold. He testifies that he began at a point on the bayou Rouge, where the dividing line between Bordelon’s land, and that of Laborde, strikes the bayou, and ran down four arpents, and then ran back until he found the quantity of sixty-seven acres. After this, Bordelon put up a fence on the front portion of the line, which has existed ever since, as far back as the improvements go. Baron cleared back of the line separating No. 4 from No, 9. Bordelon and *170 Coco, have continued to cultivate below the line, ever since 1827, and up to the line. Posts were planted on these lines in presence of the parties, which yet remain. Baron also put up a fence in conformity to this survey. These posts were found when the land was surveyed under the order of court in this case.
The testimony of McCauley was objected to by the plaintiff’s counsel, on the ground, that parol testimony cannot be received for the purpose of controlling the express conditions of the deed ; and that no parol evidence can be received of what took place between Bordelon and Baron, before the passage and execution of the deed. But the evidence was admitted, and we think properly ; not only was such a survey contemplated by the parties, but it was a tradition of the thing sold, as the parties understood the contract at the time. They have continued to hold ever since that period in conformity to the survey then made.
Marcotte having been interrogated upon facts and articles, admits among other things, that before he purchased he went to visit the land ; that it was designated to him to be bounded above by Milligan and Apollinaire Bordelon ; in the rear by posts set in the ground, on the front by a fence, and below by the land of Lucien Coco. These answers were not, perhaps, legal evidence against Durand, the intervenor, but they were not liable to the objection made by the intervenor that they constituted parol evidence, and tended to contradict, or explain, the written- deed. Their obvious purpose was to prove, that Marcotte knew how his vendor possessed in relation to his neighbors, and what land was really intended to be sold. Durand acquired no greater right than Marcotte had, especially as he purchased pendente lite.
Courts of justice are bound, in the interpretation of contracts, to seek the common intent of the parties, rather than to adhere to the literal sense of the terms. “ When the intent of the parties is doubtful,” says the Code, “ the construction put upon it by the manner in which it has been executed by both, or by one, with the express or implied assent of the other, furnishes a rule for its interpretation.” Art. 1951. Parol evidence is clearly admissible to show in what manner a contract has been executed by the parties, and how far in a contract for the sale of land the posses *171 sion has been conformable to the deed. In the case now before ns, the tradition was made by a survey, and by planting posts on the lines as was agreed upon by the parties. The land as delivered was bounded on the front, on one side by Laborde, now Milligan, and below by the vendor, and on that line a fence, having four arpents front on the bayou Rouge, in literal conformity to the terms of the contract. Since 1827, all parties have acquiesced in that state of things. The contract was executed by the tradition and acceptance of the thing sold, as understood by the parties at the time ; and, in our opinion, this practical interpretation by the parties themselves, ought not to be disturbed.

Judgment affirmed.